# Barron *v.* City of Anniston.

## *Violating Municipal Ordinance.*

(Decided Dec. 17, 1908. 48 South. 58.)

1. *Evidence; Res. Gestae; Other Transactions.*—Where a witness testified that he called the defendant from his room and paid him for whiskey he had bought earlier in the day ,and told him that he wanted another pint, the court properly refused to exclude the statement concerning the payment for the whiskey previously bought, since it was part of the res gestae, and to have done so would have left the sentence without meaning.

2. *Witnesses; Impeachment; Bias.*—A witness may be asked, on cross examination, if he had not taken enough interest in the prosecution to follow the proceedings before the chancellor on an application for reduction of bail, as tending to show his animus for and bias towards the defendant.

3. *Appeal and Error; Harmless Error; Exclusion of Evidence.*—Where the witness subsequently described the location of the rooms, the error, if any, in refusing to permit him to state whether it was possible for anyone to get into the defendant's room without passing through witness' room, was rendered harmless.

[Barron v. City of Anniston.]

4. *Municipal Corporation; Violating Ordinances; Conduct of Trial.* —An appeal from a conviction in the recorder's court to the city court for the violation of an ordinance is still the same case and governed by the same rules as to the admissibility of evidence, and the proof necessary for a conviction, although the trial is de novo.

5. *Words and Phrases; "Quasi."*—The term, "quasi," marks a resemblance and supposes a difference, and is not very definite.

6. *Municipal Corporations; Violation of Ordinances; Prosecution; Nature of Proceedings.*—Although not strictly within the definition of a criminal case, because not against the state in its sovereign capacity, a prosecution in the circuit or city courts for the violation of a municipal ordinance partakes of the nature of a criminal prosecution, and is subject to the same rules of evidence; and this is especially true where the offense is punishable by imprisonment or hard labor, and the rule that to justify a conviction, the evidence must establish guilt beyond a reasonable doubt is applicable on a trial de novo in the city or circuit court on appeal from a conviction in the recorder's court for violation of a municipal ordinance.

7. *Witnesses; Competency; Husband and Wife.*—The wife of a defendant is not a competent witness in his behalf in a prosecution for violation of a municipal ordinance in the circuit or city court, on appeal from a conviction in the recorder's court.

APPEAL from Anniston City Court.

Heard before Hon. THOMAS W. COLEMAN, JR.

J. F. Barron was convicted in the city court on appeal from the recorder's court, of violating an ordinance of the city of Anniston, and he appeals. Reversed and remanded.

KNOX, ACKER & BLACKMON, for appellant. The court erred in sustaining the objection of the city to the question asked the witness Sheets.—*Beal v. The State,* 138 Ala. 94. Counsel discuss other assignments of error based upon the evidence, but without citation of authority. They insist that the charge requested should have been given, and cite in support thereof.—Secs. 6700, 6731, Code 1907; Acts 1898-9, pp. 508, 516.

A. P. AGEE, for appellee. The court did not err in refusing to charge that the jury must believe the evidence beyond a reasonable doubt before a conviction could be had, as to be reasonably satisfied is sufficient

in a proceeding of this kind, which charge was given.—
*Carter v. Fulgham,* 134 Ala. 238. Counsel discusses as-
signments of error as to evidence, but without citation
of authority.

SIMPSON, J.—The appellant, after having been con-
victed before the recorder of the city of Anniston, ap-
pealed to the city court, and was tried in that court;
the form of the action being a complaint claiming $500
on account of the violation of said city ordinance, and
also claiming, in addition, that the defendant should be
imprisoned for six months.

The witness Bryant, in describing his interview with
the defendant, said that when he called him from his
room he paid him for whisky he had bought that morn-
ing and told him he wanted another pint; and defend-
ant moved to exclude that part of the testimony about
paying for the whisky previously bought. There was
no error in overruling said motion. The words object-
ed to were a part of res gestæ, and to have stricken them
out would have left the sentence without meaning.

The court erred in sustaining the objection to the
question, by defendant's counsel to the witness Sweets,
as to whether he had not taken enough interest in the
prosecution of the defendant to follow the proceedings
before Chancellor Whiteside on application to reduce
bail. This question was asked on cross-examination,
in which great latitude is allowed and the defendant was
entitled to have all the facts brought out which might
have any bearing on the animus of the witness to him.
—*Beal v. State,* 138 Ala. 94, 98, 35 South. 58.

If there was error in the refusal to allow the witness
Yeatman to answer whether it was possible for any one
to get into the defendant's room without passing through
his, it was without injury, as the witness afterwards

26 R

fully described the location of the rooms, from which the court could judge whether defendant's room could be otherwise reached.

The refusal to allow the wife of the defendant to testify in his behalf, and, on the other hand, the refusal to give the charge requested by the defendant as to reasonable doubt, bring up the main question in this case, to wit, the nature of the proceeding and the rules of evidence which should prevail. While the trial in the city court is de novo, yet it is still the same case, involving a prosecution for the violation of a city ordinance, and must be governed by the same rules as to the admission of evidence and the proof necessary for conviction. While there seems to be some confusion in the authorities generally as to the nature of such proceedings, a learned annotator suggests that when the proceeding relates to "private corporate purpose," or to the mere collection of a fine, civil proceedings would be proper; yet "considering it as an arm of the government, clothed with sovereign power and endowed with the function of enacting and enforcing laws for the preservation of the public peace and health, the protection of life and property, even to the limit of punishment by forfeiture and imprisonment for the public weal, debt and assumpsit seem alien and vain remedies, and nothing but criminal procedure suggests itself as proper and efficient." 28 Cyc. 781, and note 85.

Our own court, at an early day, held that proceedings for the recovery of fines and penalties are quasi criminal, and "should be conducted with greater regard to strictness than attaches to the pleadings in civil cases," and that the rules with regard to indictments for misdemeanors may, with much propriety, be applied to them.—*Brown v. Mayor, etc., of Mobile*, 23 Ala. 722, 724. Again, this court has said that proceedings for the

[Barron v. City of Anniston.]

violation of city ordinances are in no sense "civil causes," but are "punitive regulations," and "the object of a proceeding for the violation of them is not the redress for a civil injury, but the punishment of an offender against the peace and good order of society. Hence they are termed 'quasi criminal proceedings.'"—*Withers v. State ex rel., etc.,* 36 Ala. 252, 262. Based upon the reasoning of these cases, our court held (previous to the enactment of the statute authorizing defendants in criminal cases to testify) that a defendant, on trial for a violation of a city ordinance, could not testify.— *Mayor of Mobile v. Jones,* 42 Ala. 630.

Again it was held that as "a prosecution for a violation of a municipal ordinance, designed for the preservation of the public peace, the security of the person or property, or the protection of public morals," is "a quasi criminal proceedings, and not a civil suit," therefore the costs in such a case could not be taxed against the city on appeal.—*City Council of Montgomery v. Foster,* 54 Ala. 62. "Such municipalities are subdivisions of the political organization of the state," etc., (*Town of Camden v. Bloch,* 65 Ala. 236, 241), and are governed by stricter rules of investigation than civil cases (*Furhman v. Mayor, etc., of Huntsville,* 54 Ala. 263). In a recent case, in which we held that a party arrested for a violation of a city ordinance was entitled to a written complaint describing his offense, we pretermitted this question and stated "if it was neither civil nor criminal, but partook of the nature of both, then the right was secured by the common law."—*Mayor and Aldermen of Birmingham v. O'Hearn,* 149 Ala. 307, 310, 42 South. 836. In another recent case, in which we affirmed the action of the lower court in discharging a prisoner because of the failure of the affidavit to conform to section 4600 of the Criminal Code of 1896, we said:

"The proceeding was quasi criminal. It was commenced by affidavit and warrant, and was essentially in the nature of a prosecution. * * * The fact that the case was triable de novo in the city court did not change the character of the proceeding from that of a prosecution criminal in its form and nature to that of a civil action in debt."—*City of Selma v. Shivers,* 150 Ala. 502, 43 South. 565, 566.

"Quasi" is not a very definite term. It has been said that it "marks a resemblance and supposes a difference." 23 Am. & Eng. Ency. Law (2d Ed.) 540. While our own court, as well as others, speaks of these proceedings as quasi criminal, neither defines just how far criminal they are; yet we think it safe to say that, while they do not strictly come within the definition of criminal cases (because they are not for offenses against the state in its sovereign capacity), yet, as the city is one of the governmental instrumentalities, clothed with a part of the sovereignty of the state, these offenses—particluarly those which may be punished by imprisonment or hard labor—partake so far of the nature of criminal prosecutions that they should be subject to the same rules of evidence. It seems that the legislative intent was to make it clear that this interpretation should be placed upon the charter of the city, for in the amendment thereto it is declared that: "The proceedings on such appeal shall be, in all respects, as prescribed by law in cases of appeals from the judgment of the county court in criminal cases, except as herein changed."—Acts 1898-99, pp. 508-516.

The long-established rule that, in order to a conviction, the evidence must establish guilt beyond a reasonable doubt, results from the presumption of innocence which attends every one and the nature of our free government, which jealously guards the liberty of the citi-

[Johnson v. Motlow.]

zen; and we cannot see why he should be protected against a prosecution from the state, and not be equally protected against a prosecution by one of the governmental instrumentalities of the state. Consequently the court erred in refusing to give the charges, requested by the defendant, to the effect that, unless the jury were satisfied of the guilt of the defendant from the evidence beyond reasonable doubt and to a moral certainty, they could not convict. It also follows that the court did not err in refusing to allow the wife of the defendant to testify.

The judgment of the court is reversed, and the cause remanded.

TYSON, C. J., and DOWDELL and DENSON, JJ., concur.